**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SHELIA MELSON**                                         **CIVIL ACTION**

**VERSUS**                                                **NO: 12-135**

**VISTA WORLD INC. AND ASSOCIATES, ET AL.**               **SECTION: "H"(4)**

## ORDER AND REASONS

Before the Court are the following Motions: (1) Motion to Dismiss for Failure to State a Claim filed by Defendant Vista World, Inc. (R. Doc. 12); (2) Motion to Dismiss for Lack of Personal Jurisdiction filed by Global Readers Services, Inc. (R. Doc. 13); (3) Motion to Dismiss the Amending and Superseding Complaint filed by Vista World, Inc., Global Readers Services, Inc., and Jackie Abdo (R. Doc. 36).

For the following reasons, the Motion to Dismiss the Amending and Superseding Complaint (R. Doc. 36) IS GRANTED IN PART and DENIED IN PART. Plaintiff Sheila Melson's claims against Global Readers Services, Inc. are DISMISSED WITHOUT PREJUDICE. Plaintiff's battery claim and

retaliatory discharge claim shall remain pending.  The Motion to Dismiss for Failure to State a Claim (R. Doc. 12) and the Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 13) are DENIED AS MOOT.

## BACKGROUND

As alleged in her Complaint, Plaintiff Shelia Melson worked as a telemarketer for Defendant Vista World, Inc. ("Vista World") (alleged to comprise a single business entity with Defendant Global Readers Services, Inc. ("Global")).  (R. Doc. 33 ¶4.)  In response to allegations that Plaintiff used racial slurs when referring to her co-workers, Plaintiff's desk was moved by the Operations Manager for Vista World—Defendant Jackie Abdo ("Abdo")—"to a spot behind the main door." (*Id.* at ¶¶ 15–16.)  From November 11, 2011 to December 3, 2011, Plaintiff was allegedly "hit by the door as it opened 10-15 times per day."

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on November 16, 2011, and December 5, 2011.  (*Id.* at ¶11.)  Abdo fired Plaintiff on December 7, 2011. (*Id.* at ¶9.)

Plaintiff filed her original complaint *pro se* on January 27, 2012.  (R. Doc. 1.)  Plaintiff alleged racial discrimination, disability discrimination, and retaliatory discharge against Defendants Vista World and Global.  (*Id.*)  Vista World and Global filed separate Motions to Dismiss on April 10, 2012 (R. Docs. 12; 13), which Plaintiff opposed on April 17, 2012 (R. Docs. 16; 17).  Plaintiff filed through counsel an Amended and Superseding Complaint ("Amended Complaint") on June 29, 2012 and

2

added Abdo as a Defendant.  (R. Doc. 33.)  Plaintiff abandoned her discrimination claims, maintained her claim for retaliatory discharge, and added a claim for battery against Abdo.  (*Id.*)  On August 24, 2012, Defendants filed a Motion to Dismiss the Amended Complaint, alleging that it fails to state a claim upon which relief can be granted and that the Court lacks personal jurisdiction over Global.  (R. Doc. 36.)  Plaintiff opposed the Motion on September 15, 2012.  (R. Doc. 39.)

**LEGAL STANDARD**

I.     <u>Dismissal for Lack of Personal Jurisdiction—Fed. R. Civ. P. 12(b)(2)</u>

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *LuvN'Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).  When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction. *Guidry v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).  "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[] for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp., et al.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983).  "In determining whether personal jurisdiction exists, the trial court

3

is not restricted to a review of the plaintiff's pleadings." *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751,

753 (5th Cir. 1996).  The Court may consider matters outside the complaint, including affidavits,

interrogatories, depositions, or any combination of the recognized methods of discovery. *Id.* (citing

*Colwell Realty Investments v. Triple T. Inns of Arizona*, 785 F.2d 1330 (5th Cir. 1986)).

Jurisdiction over a non-resident defendant is proper when (1) the defendant is amenable

to service of process under the long-arm statute of the forum state; and (2) the exercise of

personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.

*Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990).  In the instant case, "these two

inquiries merge into one because Louisiana's long-arm statute permits service of process

coterminous with the scope of the due process clause." *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784,

786 (5th Cir. 1990); *see also* La. R.S. § 13:3201.

"The Due Process Clause of the Fourteenth Amendment protects a corporation, as it does

an individual, against being made subject to the binding judgments of a forum with which it has

established no meaningful 'contacts, ties, or relations.'" *Pervasive Software Inc. v. Lexware GMBH*

*& Co. KG*, 688 F.2d 214, 220 (5th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319

(1945)).  A court may exercise personal jurisdiction over a non-resident defendant when (1) the

defendant has purposefully availed itself of the benefits and protections of the forum state by

establishing "minimum contacts" with the forum state; and (2) exercising personal jurisdiction over

the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*

4

*v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe*, 326 U.S. at 316).

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific personal jurisdiction exists when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state and the controversy arises out of or is related to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 262, 472 (1985). General personal jurisdiction exists when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether such activity is related to the plaintiff's cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall, et al.*, 466 U.S. 408, 415 (1984).

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied.*" Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)). The fairness inquiry is determined by analyzing several factors. *Asahi*, 480 U.S. at 113. These factors are: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (internal citations omitted).

II.   <u>Failure to State a Claim Upon Which Relief Can Be Granted—Fed. R. Civ. P 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009).  The Court need not, however, accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S. Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Id*.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Iqbal*, 129 S. Ct. at 678 (quoting *Twombly*, 550 S. Ct. at 1955).  Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57.  If it is apparent from the face of the complaint that the plaintiff is not entitled to relief, the court must dismiss the claim. *Jones v. Bock,* 549 U.S. 199, 215 (2007).

## LAW AND ANALYSIS

Defendants move to dismiss Plaintiff's Amended Complaint on the grounds that it fails to state a claim upon which relief can be granted and that the Court lacks personal jurisdiction over

Global.  The Court's findings, as explained more fully *infra*, are as follows: (1) The Court does not have personal jurisdiction over Global; thus all claims against Global are dismissed without prejudice; (2) Plaintiff has stated valid claims for retaliatory discharge and battery; (3) the Motions to Dismiss previously filed by Vista World and Global are now moot.

A.      Motion to Dismiss the Amended Complaint

        I.      Whether the Court has Personal Jurisdiction over Global

        The Court finds Global does not have the requisite minimum contacts with Louisiana to support the exercise of general or specific jurisdiction.  Plaintiff's claims against Global are dismissed without prejudice.

                *a. Vista World's Contacts May Not Be Imputed to Global*

        For the following reasons, the Court finds that Vista World's contacts with Louisiana may not be imputed to Global.  Accordingly, the grounds for exercising personal jurisdiction over Global must derive from its contacts with Louisiana.

                        *i. Arguments of the Parties*

        Plaintiff avers that Vista World and Global comprise a single business enterprise such that the former's contacts with Louisiana may be imputed to the latter for purposes of establishing personal jurisdiction.   (R. Doc. 33 ¶1.)   Global argues that Courts presume institutional independence when determining whether one corporation's contacts with the forum state can support personal jurisdiction over a related corporation and that Plaintiff has failed to allege facts

7

sufficient to overcome this presumption.  (R. Doc. 36.)  Global further contends that the Court should use an eighteen-factor test, established in *Green v. Champion Ins. Co.*, 577 So. 2d 249 (La. 1991), in determining whether Vista World and Global comprise a single business entity.  (*Id.*)

Plaintiff counters that Louisiana jurisprudence suggests that the Court should only consider four factors in deciding the single business enterprise issue: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."  (R. Doc. 39.) (quoting *Guillory v. Rainbow Chrysler Dodge Jeep, LLC*, 158 F. App'x 536, 537–38 (5th Cir. 2005)).  Plaintiff argues that all four factors militate in favor of finding that Global and Vista World constitute a single business enterprise. (R. Doc. 39.)

### ii. Federal Common Law Controls

Although *Green* was suggested by both parties as the applicable standard for determining whether Vista World's contacts with Louisiana may be imputed to Global for purposes of establishing personal jurisdiction, Louisiana law does not supply the rule of decision in this case. This Court would only apply the *Green* factors if jurisdiction was based on diversity of citizenship. *Cf. Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 n.5 (5th Cir. 2011) (per curiam) ("An alter ego analysis in Louisiana diversity cases should be performed under factors enunciated under Louisiana law."); *Whitener v. Pliva, Inc.*, No. 10–1552, 2012 WL 1343964, at *5 (E.D. La. Apr. 18, 2012) ("The Fifth Circuit recently admonished district courts and litigants in diversity cases to be careful to apply the applicable state-law alter ego test.") (citing *Adm'rs of Tulane Educ. Fund*,

8

450 F. App'x at 330 n.5).  In the instant case, subject matter jurisdiction is predicated upon a federal

question.  (R. Doc. 33 ¶1.)  Accordingly, federal common law applies.  *See Home Sav. Bank, F.S.B.*

*by Resolution Trust Corp. v. Gillam*, 925 F.2d 1152, 1162 (9th Cir. 1991) ( "Incorporation of state law

occurs in federal question cases only in the absence of federal common or statutory law . . . .

[W]hen federal common law already exists, as it does here, the Supreme Court has refused to apply

state law.") (citing *Cal. ex rel. State Lands Comm'n v. United States*, 457 U.S. 273, 286 (1982));

*Crosby v. Blue Cross Blue Shield of La.*, No. 08–0693, 2012 WL 5450040, at *5 (E.D. La. Nov. 7, 2012)

("Federal common law . . . controls in cases brought under 'federal question' jurisdiction."); *Viera*

*v. Chehaiber,* No. 08–00182 JRG, 2010 WL 960347, at *3 (C.D. Cali. Mar. 16, 2010) (finding that

when "jurisdiction is based on a federal question" in a veil piercing case, "federal common law,

rather than state law, controls."). Since, as explained more fully *infra*, the Fifth Circuit has

developed a distinct test in federal question cases for determining when one corporation's contacts

with a forum can be attributed to a related corporation, this Court is bound to apply the Fifth

Circuit test. *Cf. Adm'rs of Tulane Educ. Fund*, 450 F. App'x at 330 n.5 ("This court has also adopted

the *Hargrave* factors in cases construing federal common law.") (citing *Dickson*, 179 F.3d 331, 339

(5th Cir. 1999)).

### iii. Federal Common Law—The "Hargrave Factors"

"As a general rule . . . the proper exercise of personal jurisdiction over a nonresident

corporation may not be based solely upon the contacts with the forum state of another corporate

entity with which the defendant may be affiliated.*" Freudensprung v. Offshore Technical Servs.,
Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333,
335 (1925)).  Accordingly, "[c]ourts have long presumed the institutional independence of related
corporations, such as parent and subsidiary, when determining if one corporation's contacts with
a forum can be the basis of a related corporation's contacts."  *Dickson*, 179 F.3d at 338.  This
presumption, however, "is not inviolate."  *Freudensprung*, 379 F.3d at 346.  It may be overcome
by clear evidence "of one corporation asserting sufficient control" over the other.  *Dickson*, 179
F.3d at 338.  "[T]he burden of making a prima facie showing of such symbiotic corporate
relatedness is on the proponent of the agency/alter ego theory."  *Id.*

    In *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983), the Fifth Circuit set forth
seven factors to be considered in determining whether a parent company can be held amenable
to personal jurisdiction because of its subsidiary's contacts with the forum state:

> (1) the amount of stock owned by the parent of the subsidiary; (2)
> whether the two corporations have separate headquarters; (3)
> whether they have common officers and directors; (4) whether they
> observe corporate formalities; (5) whether they maintain separate
> accounting systems; (6) whether the parent exercises complete
> authority over general policy; and (7) whether the subsidiary
> exercises complete authority over daily operations.

*Adm'rs of Tulane Educ. Fund v. Biomeasure, Inc.*, 687 F. Supp. 2d 620, 624 (E.D. La. 2009) (citing
*Dickson*, 179 F.3d at 339).  "It is not sufficient that one company owns 100 percent of the other and
that they share the same officers and directors."  *Adm'rs of Tulane Educ. Fund*, 687 F. Supp. 2d at

624 (citing *Hargrave*, 710 F.2d at 1160). Moreover, "[w]here a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent." *Adm'rs of Tulane Educ. Fund*, 450 F. App'x at 331. Although the so-called "*Hargave* factors" address a parent-subsidiary relationship, the Fifth Circuit held that *Hargrave* may be applied by analogy to sibling corporations i.e. corporations with a common owner. *Dickson*, 179 F.3d at 338–39.

### iv. Applying the Hargrave Factors

Since Global and Vista World are sibling corporations, this Court follows the Fifth Circuit's lead in *Dickson* and applies the *Hargrave* factors to determine whether Global exercises "sufficient control" over Vista World. *See Dickson*, 179 F.3d at 338.

The parties do not dispute that Andrew Lachowicz owns both Global and Vista World.  (R. Doc. 135.)  Under the first *Hargrave* factor, however, the question is whether the foreign defendant owns stock in the domestic defendant. *Cf. id.* at 339.  Accordingly, since Plaintiff does not allege that Global owns stock in Vista World, the first factor weighs against exercising jurisdiction.

Since the parties do not dispute that Global and Vista World have separate headquarters, the second factor also weighs against exercising jurisdiction. (*See* R. Doc. 39.) Moreover, although Plaintiff alleges "common management," she does not allege that Global and Vista World have common officers and directors.  Accordingly, the third factor militates against imputing Vista World's contacts with Louisiana to Global.

11

Plaintiff does not allege failure to observe corporate formalities or maintain separate accounting systems.  (R. Doc. 39.) In fact,  Defendant contends that Global and Vista World "have separate bank accounts and maintain separate books and records" and that each corporation "separately adhere[s] to corporate formalities." (R. Doc. 36.)  Thus, the fourth and fifth factors clearly do not support an alter ego theory.

Regarding the sixth factor, in *Hargrave*  the court found that "selection of product lines, hiring and firing of . . . *officers*, and approval of sizable capital investments" constitute matters of "general policy."  710 F.2d at 1160 (emphasis added).  Plaintiff alleges that she can "show" that Global's home office ordered Plaintiff's termination.  (R. Doc. 39.)  However, Plaintiff is not an officer of Vista World.  As to "sizable capital investments," Plaintiff avers that in June 2011, agents of Global traveled to Vista World's Metairie office and approved the purchase of certain equipment for renewal agents and new sales agents.  (*Id.*) Assuming such purchases constitute "sizable capital investments," the sixth factor neither supports nor counsels against the exercise of personal jurisdiction.

Plaintiff alleges that Global's home office ordered Plaintiff's termination. Thus, the Court does not find that Vista World exercised complete authority over daily operations.  Accordingly, the seventh factor weighs in favor of personal jurisdiction.

On balance, Plaintiff has wholly failed to rebut the presumption of institutional separateness between Global and Vista World.  Indeed, only one of the seven *Hargrave* factors

12

arguably weighs in Plaintiff's favor.  Since Plaintiff has failed to establish a prima facie case of control, the Court holds that Vista World's contacts with Louisiana may not be imputed to Global. Accordingly, the grounds for exercising personal jurisdiction over Global must derive from Global's contacts with Louisiana.

*b. Global's Contacts with Louisiana are Insufficient to Confer General Jurisdiction*

For the following reasons, the Court finds that Global does not have "substantial, continuous, and systematic" contacts with Louisiana.  Accordingly, the Court may not assert general personal jurisdiction.

Global argues that its contacts with Louisiana are insufficient to form the basis for the exercise of personal jurisdiction.  Global avers that its principal place of business is in Ohio, that it has never had any "offices, property, assets, bank accounts, telephone listings, officers, employees, agents, representatives, brokers, or agent for service in process in Louisiana," that it has never been licensed or registered to do business in Louisiana, and that it has never paid or incurred taxes in Louisiana.  (R. Doc. 36.)  Global contends that its sole contacts with Louisiana consist of the sale of a "handful of subscriptions" to Vista World employees and members of their families.  (*Id.*)

Plaintiff counters that Global has continuous and systematic contacts with Louisiana including the solicitation of all renewal subscription sales and the billing of all new and subscription sales are done in Global's name.  (R. Doc. 39.)  Plaintiff also contends that Defendant employed ten renewal agents at Vista World's Metairie office who shared the same supervisors as Vista World

13

employees.  (*Id.*)   Moreover, as discussed *supra*, Plaintiff claims that she was present when the owners of Global Readers visited the Metairie office in June 2011.

"General jurisdiction may be found when the defendant's contacts with the forum state are 'substantial, continuous, and systematic.'" *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).  Even repeated contacts with forum residents by a foreign defendant may not be sufficient.  *Johnston*, 523 F.3d at 609.  Rather, "a defendant must have a business presence *in* the forum state." *Jackson*, 615 F.3d at 584 (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).  "'General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed.'" *Johnston*, 523 F.3d at 610 (quoting *Access Telecom, Inc.*, 197 F.3d at 717).  Such contacts must be reviewed "*in toto*, excluding any 'vague, and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts.'" *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 767 F. Supp. 2d 649, 659 (E.D. La. 2011) (quoting *Access Telecom*, 197 F.3d at 717).  The Fifth Circuit has "consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston*, 523 F.3d at 611.

In short, Global must have a sufficient business presence in Louisiana in order for this Court

14

to exercise general personal jurisdiction.  Resolving all factual controversies in Plaintiff's favor, Global's only contacts with Louisiana are: (1) contracting with Vista World to provide telemarketing services; (2) employing ten renewal agents in Vista World's Metairie office; (3) visiting the Metairie office in June 2011; (4) soliciting and billing subscription sales.  The Court finds these contacts too "insignificant and sporadic" to meet the Fifth Circuit's "high standard" for exercising general personal jurisdiction over a non-resident defendant. *See Johnston*, 523 F.3d at 612.  Accordingly, this Court may only entertain claims against Global if Plaintiff can establish a basis for specific personal jurisdiction.

### *c. Global's Contacts with Louisiana are Insufficient to Confer Specific Jurisdiction*

For the following reasons, the Court finds that Plaintiff's cause of action does not arise out of Global's contacts with Louisiana. Accordingly, the Court may not assert specific personal jurisdiction.

Global contests specific jurisdiction on the basis that its contacts with Louisiana are "completely unrelated" to Plaintiff's causes of action.  (R. Doc. 36.)  Plaintiff contends that the Court may exercise specific jurisdiction, because, "on information and belief," Global ordered that Plaintiff's employment with Vista World be terminated.  (R. Doc. 39.)  Therefore, Plaintiff argues, her claim for retaliatory discharge arises out of Global's contacts with Louisiana.

Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate

to those activities.'" *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Burger King Corp.*, 471 U.S. at 472). The defendant's activities "must be such that he could reasonably anticipate being haled into court in the forum state." *Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010) (citing *Burger King Corp.*, 471 U.S. at 474). "Specific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action." *Clemens*, 615 F.3d at 378–79 (citing *Helicopteros*, 466 U.S. at 414 n.8).

Since the Court is not holding an evidentiary hearing, Plaintiff need only make a prima facie showing of specific personal jurisdiction. *See Guidry*, 188 F.3d at 625. The Court need not, however, accept "merely conclusory" allegations or "far-fetched" inferences as true. *See Delta Brands, Inc. v. Danieli Corp.*, 99 F. App'x 1, 4 (5th Cir. 2004) (per curiam) (quoting *Cent. Freight Lines Inc.,* 322 F.3d at 380); *Bonvillain v. Louisiana Land & Exploration Co.,* 702 F. Supp. 2d 667, 682 (E.D. La. 2010). Rather, "after the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must submit affirmative evidence supporting the exercise of jurisdiction." *Bonvillain*, 702 F. Supp. 2d at 682 (citing *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003)). Such affirmative evidence may be in the form of "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Cf. Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

Plaintiff contends that this Court may exercise specific personal jurisdiction over Global, because Global ordered Abdo—a Vista World employee—to fire Plaintiff. Plaintiff avers that "the

16

witnesses to this may be Nadine Trunell and Gerri Herbert" yet fails to cite to anything in the

record as evidence.[1] (R. Doc. 39.)  This is precisely the type of self-serving, uncorroborated

statement which the Fifth Circuit has found insufficient to support a prima facie case of personal

jurisdiction.  Accordingly, the Court cannot exercise specific personal jurisdiction over Global.

Should Plaintiff later discover information that substantiates her claim, she may seek leave of court

to amend her complaint.

    II.    <u>Whether Plaintiff Has Stated a Valid Claim for Retaliatory Discharge</u>

For the following reasons, the Court finds that Plaintiff has stated a valid claim for

retaliatory discharge under 42 U.S.C. § 2000e–3(a).  Accordingly, Defendants' motion to dismiss this

claim is denied.

Defendants contend that dismissal is warranted, because Plaintiff has failed to plead facts

sufficient to establish the requisite causal connection between Plaintiff's submission of charges to

the EEOC and the termination of her employment.  Plaintiff concedes that Defendant did not

receive written notice of the EEOC charges before Plaintiff was fired.  (R. Docs. 36; 33 ¶10.)

Defendants contend that Plaintiff's assertion that Vista World had "oral knowledge"  of the first

charge filed with the EEOC is a "conclusory allegation" that is not sufficiently substantiated by

corroborating facts in the Amended Complaint to survive a motion to dismiss. (R. Doc. 36.) Plaintiff

---

[1] The court notes that Plaintiff's counsel availed himself of the opportunity to present matters outside of the pleadings in order to oppose Global's motion to dismiss for lack of personal jurisdiction yet failed to produce affirmative evidence that Global ordered Plaintiff's termination.

argues that her Amended Complaint is legally sufficient and that "[t]o require more is to put the pleading cart before the discovery horse."  (R. Doc. 39.)

The Fifth Circuit has held that the burden-shifting structure applicable to Title VII disparate treatment cases, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972), is also applicable to Title VII unlawful retaliation cases.  *See, e.g.*, *Long v. Eastfield Coll.*, 88 F.3d 300,  304 (5th Cir. 1996); *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983); *Puente v. Ridge*, 324 F. App'x 423,  427–28 (5th Cir. 2009).  Where a Title VII plaintiff offers circumstantial evidence, the *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination.  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). "A plaintiff establishes a prima facie case for unlawful retaliation by proving (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."  *Long*, 88 F.3d at 304 (citing *McMillan*, 710 F.2d at 1116).

"An employee has engaged in activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long*, 88 F.3d at 304 (quoting 42 U.S.C. § 2000e–3(a)).  "'Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'"  *Ackel v. Nat'l Commc'n, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v.*

18

*Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2003)).  In the Fifth Circuit, a plaintiff "need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case."[2]  *Long*, 88 F.3d at 305 n.4; *accord Nunley v. City of Waco*, 440 F. App'x 275, 281 (5th Cir. 2011) (per curiam); *see further Keel v. Wal-Mart Stores, Inc.*, No: 1:11–CV-248, 2012 WL 3263575, at *10 (E.D. Tex. July 17, 2012) ("In the Fifth Circuit, the 'causal link' element of a plaintiff's *prima facie* case is not held to a 'stringent' standard.'").

This Court is mindful that the prima facie case is an evidentiary standard, not a rigid pleading requirement.  *Moore v. Metro. Human Serv. Dist.*, No. 09–6470, 2010 WL 1462224, at *3 (E.D. La. Apr. 8, 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  Thus, for purposes of surviving a motion Rule 12(b)(6) motion to dismiss, the Supreme Court has held that "'an employment discrimination plaintiff need not plead a prima facie case of discrimination.'" *Puente*, 324 F. App'x at 427 (quoting *Swierkiewicz*, 534 U.S. at 511).  Nonetheless, this Court "may consider the *McDonnell Douglas* framework in assessing the sufficiency of a complaint, as 'no plaintiff is exempt from the obligation to allege facts sufficient to state all the elements of her claim.'"  *Monson v. Jazz Casino Co., LLC*, No. 11–2716, 2012 WL 3138047, at *2 (E.D. La. Aug. 1,

---

[2] In *Long*, the court distinguished between the standard of proof applicable to the "ultimate issue in an unlawful retaliation case," namely, "whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in conduct protected by Title VII," and "[t]he standard for establishing the 'causal link' element of the plaintiff's prima facie."  F.3d at 305 n.4.  The former requires "but for" causation whereas the latter standard is "much less stringent."  *Id.*

2012) (citing *Puente*, 324 F. App'x at 248) (quoting *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008) (per curiam)).

Defendants do not dispute that Plaintiff satisfies the first two elements of the tripartite test. Plaintiff clearly engaged in activity protected by Title VII when she filed charges with the EEOC. Moreover, Plaintiff was the subject of an adverse employment action when her employment with Vista World was terminated. Defendants instead contend that Plaintiff's Amended Complaint does not adequately plead a causal link between the filing of charges with the EEOC and the termination of Plaintiff's employment. (*See* R. Doc. 36.)

Plaintiff's Amended Complaint alleges that Abdo had "oral knowledge . . . before or shortly after Thanksgiving" of the first charge filed by Plaintiff. (R. Doc. 33 ¶10.) The Court does not agree that this allegation constitutes a "naked assertion[] devoid of further factual enhancement." (R. Doc. 36) (quoting *Iqbal*, 556 U.S. at 678). Plaintiff's complaint alleges *who* learned of Plaintiff's first charge and approximately *when* that knowledge was gained. The Court finds that Plaintiff has pled "factual content that allows the court to draw the reasonable inference" that Abdo had oral knowledge of Plaintiff's first EEOC charge before Plaintiff's employment was terminated. *Cf. Iqbal*, 556 U.S. at 678. Consequently, Plaintiff has met her burden of establishing a causal link between her protected activity and the adverse employment action.

In sum, the Court finds that Plaintiff's Amended Complaint provides a "short and plain statement showing that [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff has met all

three elements of the *McDonnell Douglas* test.  Accordingly, Defendants' motion to dismiss the retaliatory discharge claim is denied.

III.     Whether Plaintiff Has Stated a Valid Claim for Battery

For the following reasons, the Court finds that Plaintiff has stated a valid claim for battery under Louisiana law.  Accordingly, Defendants' motion to dismiss this claim is denied.

Abdo contends that Plaintiff fails to state a claim for battery under Louisiana law, because she does not allege that "Abdo *herself* intentionally used force or violence upon [Plaintiff's] person."  (R. Doc. 36) (emphasis added).   Plaintiff essentially argues that a tortfeasor need not make direct contact with the victim in order to be liable for battery.  (R. Doc. 39.)

"Battery is '[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Johnson v. Bergeron*, 966 So. 2d 1059, 1060 (La. Ct. App. 2007) (quoting *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987).  A plaintiff need not suffer physical harm in order to state a claim for battery.  Rather, "[t]he contact involved can be 'merely offensive and insulting.'" *Lawson v. Straus*, 673 So. 2d 223, 226 (La. Ct. App. 1996) (quoting *Caudle*, 512 So. 2d at 391).   In other words, the contact must be "offensive to a person of ordinary sensibilities."  Frank L. Maraist & Thomas C. Galligan, Jr., *Louisiana Tort Law*, § 2.06 at 28 (2d ed. 2011).

As to the element of scienter, "[t]he defendant's intention need not be malicious nor need it be an intention to inflict actual damage." *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003)

21

(citing *Caudle*, 512 So. 2d at 391).  "It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent." *Bennett v. Ragon*, 907 So. 2d 116, 121 (La. Ct. App. 2005).

"In Louisiana, '[b]attery does not require direct bodily contact between the actor and the victim.'" *Swope v. Columbian Chems. Co.*, 281 F.3d 185, 196 (5th Cir. 2002) (quoting Maraist & Galligan at 28.)  For example, "'[t]he contact may be with an inanimate object controlled or precipitated by the actor.'" *Swope*, 281 F.3d at 185 (quoting Maraist & Galligan at 28). The Louisiana Supreme Court has admonished courts "to apply the legal precepts of general tort law" where, as in the instant case, "an employee seeks to recover from his employer for an intentional tort." *Caudle*, 512 So. 3d at 391.  As reflected by the leading tort treatises, the "general tort law" does not require a direct application of force by the tortfeasor.  *See, e.g.*, Restatement (Second) of Torts §  18 ("It is not necessary that the contact with the other's person be directly caused by some act of the actor. All that is necessary is that the actor intend to cause the other, directly or indirectly, to come in contact with a foreign substance in a manner which the other will reasonably regard as offensive."); W. Page Keeton, et al., *Prosser and Keeton on Torts* § 9 at 40 (5th ed. 1984) ("[I]t is no longer important that the contact is not brought about by a direct application of force . . . it is enough that the defendant sets a force in motion which ultimately produces the result."); Dan B. Dobbs, et al., *The Law of Torts*, § 33 at 82 (2d ed. 2011) ("[I]f the defendant acts on an intention to inflict a harmful or offensive bodily contact, and he succeeds, he is liable for the

battery whether harm is direct or not."); 6A C.J.S. *Assault* § 12 (2012) ("[T]he force used may be either direct and immediate, that is, such force as is applied directly by defendant, or indirect and consequential, that is, such force as is applied through some intervening agency, but of which defendant is, nevertheless, the proximate cause.").

The Court now applies these legal precepts and finds that the Plaintiff has stated a valid claim for battery.  The threshold issue is whether Plaintiff has suffered a "harmful or offensive contact."  Plaintiff does not allege that she suffered physical harm when she was struck by a door 10-15 times per day for approximately three and a half weeks.  However, since such contact could be offensive or insulting to a person of ordinary insensibilities, the Court finds that this element of Plaintiff's claim is satisfied at this stage.

The next issue is whether Abdo had the requisite intent to batter Plaintiff.  Plaintiff alleges Abdo "intentionally" subjected her to the "strikings by the door."  (R. Doc. 33 ¶17.)  Since this allegation must be accepted as true, the Court finds that Plaintiff has alleged the requisite intent.

The Court rejects Abdo's argument that Plaintiff has failed to state a claim since she does not allege direct contact by the tortfeasor.  As discussed *supra*, Louisiana law does not require that a tortfeasor directly contact the victim.  Rather, it suffices if the tortfeasor intends to cause a harmful or offensive contact and performs some act in furtherance thereof which ultimately produces the desired outcome.  The allegations in Plaintiff's Amended Complaint meet this standard.

23

B.      Motions to Dismiss Filed Prior to Plaintiff's Amended and Superseding Complaint

For the following reasons, the Court denies as moot the Motion to Dismiss for Failure to State a Claim (R. Doc. 12) and the Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 13).

Vista World and Global filed separate Motions to Dismiss in response to Plaintiff's original complaint.  Plaintiff subsequently amended her complaint (R. Doc. 33) and defendants filed a Motion to Dismiss (R. Doc. 36).  The Court must therefore analyze the effect of an amended complaint and subsequent Rule 12(b)(6) motion on a previously filed Rule 12(b)(6) motion.

Courts vary in how they proceed when a plaintiff files an amended complaint while a Rule 12(b)(6) motion is still pending.  Steven S. Gensler, 1 *Federal Rules of Civil Procedure*, Rules and Commentary Rule 15.  Some courts hold that a pending Rule 12(b)(6) becomes moot.[3]  Other courts, however, hold that the filing of an amended complaint does not automatically moot a pending Rule 12(b)(6) motion.[4]

---

[3] *See, e.g.*, *Merritt v. Fogel*, 349 F. App'x 742, 745 (3rd Cir. 2009) ("the filing of [an] amended complaint . . . would have rendered moot defendants' motion to dismiss) (citing *Pure Country, Inc., v. Sigma Chi Fraternity*, 312 F.2d 952, 956 (8th Cir. 2002));  *Abb, Inc., v. Reed City Power Line Supply Co.*, 2007 WL 2713731, at *1 (W.D. Mich. Sept. 18, 2007) ("Because the original complaint has been superseded and nullified, there is no longer a live dispute about the propriety or merit of the claims asserted therein; therefore, any motion to dismiss such claims is moot."); *Calloway v. Green Tree Servicing, LLC*, 559 F. Supp. 2d 543, 546 (D. Del. 2009) ("As the amended complaint has superseded the original, defendant's motion to dismiss has become moot."); *Kentucky Press Ass'n, Inc. v. Commonwealth of Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) ("Plaintiff's amended complaint supercedes the original complaint, thus making the motion to dismiss the original complaint moot.").

[4] *See, e.g.*, *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D. N.Y. 2008) ("'When a plaintiff amends its complaint while a motion to dismiss is pending' the court may 'den[y] the motion as moot [or] consider[ ] the merits of the motion in light of the amended complaint.'") (quoting

Since Global and Vista World have filed a *new* motion to dismiss, the Court need not decide the merits of the previously filed Rule 12(b)(6) motions.  When a new Rule 12(b)(6) motion is filed that specifically addresses an amended complaint, "it surely makes sense to disregard the pending [Rule 12(b)(6)] motion[s]."   Steven S. Gensler, 1 *Federal Rules of Civil Procedure*, Rules and Commentary Rule 15.  Accordingly, the previously filed motions to dismiss are denied as moot.

## CONCLUSION

For the reasons previously stated, the Motion to Dismiss the Amended Complaint (R. Doc. 36) is granted in part and denied in part. The Motion to Dismiss for Failure to State a Claim (R. Doc. 12) and the Motion to Dismiss for Lack of Personal jurisdiction (R. Doc. 13) are denied as moot.

New Orleans, Louisiana, on this 30th day of November, 2012.

---

*Roller Bearing Co. of America, Inc. v. American Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)); *Patton Elec. Co., Inc, v. Rampart Air, Inc.*, 777 F. Supp. 704, 713 (N.D. Ind. 1991) ("If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.") (quoting 6 Wright, Miller & Kane, *Federal Practice and Procedure*, § 1476 at 556–58 (2d ed. 1990)); *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 570 (E.D. Va. 2004) ("Defendants are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.").

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**